# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VINCENT L. JEFFERSON, | : | CIVIL ACTION |
| Petitioner, | : | |
| v. | : | MAR   - 2011 |
| PHIL MORGAN, Warden, and ATTORNEY GENERAL FOR THE STATE OF DELAWARE, | : | |
| Respondents. | : | NO. 09-577 |

## MEMORANDUM RE: HABEAS CORPUS PETITION

**Baylson, J.**                                                                                                   **March 25, 2011**

### I.   Introduction

Petitioner Vincent L. Jefferson filed a pro se Petition For Writ Of Habeas Corpus under 28 U.S.C. § 2254, raising four grounds for relief ("Petition"). (Doc. No. 7) Jefferson is currently incarcerated in the Howard R. Young Correctional Institution located in Wilmington, Delaware. The State filed an initial Answer to Jefferson's petition, and then, given procedural changes in the status of Jefferson's state criminal proceeding, filed an Amended Answer. (Doc. No. 16; Doc. No. 21) Upon independent and thorough review, and for the reasons stated below, the Court will deny the Petition without an evidentiary hearing.

### II.   Background

As recounted by the Delaware Supreme Court, the facts leading to Jefferson's arrest are as follows:

> On November 5, 2008, Wilmington police officers Luke Nuzzi and Don Palmatary stopped a green 1995 Ford Explorer in the 200 block of Concord Avenue in Wilmington, Delaware. The

> expiration date on the vehicle's temporary Pennsylvania tag was
> obscured by a plastic license plate frame. Upon closer inspection,
> the police ascertained that the registration date had expired. When
> requested, Jefferson produced a valid driver's license, but
> according to police, did not produce proof of insurance or a vehicle
> registration. Both at the suppression hearing and at trial, Jefferson
> insisted that he did produce proof of insurance. There was no
> dispute that Jefferson told the police that he had just purchased the
> vehicle but had not yet registered it at Motor Vehicle. The police
> ran a computer check on the vehicle, which indicated that the
> vehicle had not been registered in Delaware or Pennsylvania.
> There was no documentation showing that title to the vehicle had
> been transferred to Jefferson.
>
> After the police had placed Jefferson in the back of the patrol car,
> they informed him that he would be charged with motor vehicle
> offenses and that the vehicle would be towed. They then
> conducted an inventory search of the vehicle and found in the
> glovebox 49 ziploc baggies of a substance later determined to be
> marijuana. Jefferson was then arrested and given his Miranda
> warnings. Later at the stationhouse, Jefferson was informed that a
> strip search would be conducted. At that point, according to
> police, Jefferson pulled from his pants another sandwich bag
> containing an additional 21 ziploc baggies of a substance later
> determined to be marijuana.

Jefferson v. State, 998 A.2d 851 (Table), 2010 WL 2490934, at *2 (Del. June 21, 2010).

On January 5, 2009, the New Castle County grand jury indicted Jefferson on the following charges: maintaining a vehicle for keeping controlled substances; possession with intent to distribute marijuana; operating an unregistered motor vehicle; driving without proof of motor vehicle insurance; and display of a fictitious or cancelled vehicle registration. (Doc. No. 21) Jefferson filed a motion to suppress, which the Superior Court denied on July 8, 2009 after conducting a hearing. Id.

On July 14, 2009, a Delaware Superior Court jury convicted Jefferson on all charges of the indictment. On November 6, 2009, the Superior Court sentenced him to a total of three and

2

one-half (3 ½) years in prison. Id.

Jefferson filed the instant Petition on October 2, 2009, before the Superior Court imposed its sentence. Also prior to his sentencing, Jefferson filed a pro se notice of appeal to the Delaware Supreme Court, which the Delaware Supreme Court dismissed as interlocutory on November 30, 2009. Jefferson v. State, 985 A.2d 390 (Table), 2009 WL 4263654 (Del. Nov. 30, 2009).

The State answered the instant Petition on January 25, 2010. After noting that the time for Jefferson to file a direct appeal had passed, the State asserted that the Court should dismiss the Petition without prejudice because Jefferson could still pursue state court remedies by filing a motion for post-conviction review in the Delaware Superior Court under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (Doc. No. 16) According to the State, even though Jefferson's failure to file a direct appeal would normally result in any subsequent Rule 61 motion as being barred under Rule 61(i)(3) as procedurally defaulted, the Superior Court could decide to apply Rule 61(i)(5)'s "miscarriage of justice" provision to let the Rule 61 motion proceed on the basis of defense counsel's failure to file a direct appeal. Id. at p. 4.

On April 19, 2010, while the instant Petition was pending, Jefferson's defense counsel filed a non-merit brief in the Delaware Supreme Court raising Jefferson's "points" to be considered on direct appeal, along with a motion to withdraw under Rule 26(c). (Doc. No. 23) The Delaware Supreme Court granted counsel's motion to withdraw, and affirmed Jefferson's convictions and sentences on June 21, 2010. See generally Jefferson, 2010 WL 2490934. In July 2010, after learning about the Delaware Supreme Court's decision, this Court provided Jefferson with the chance to file an amended federal habeas petition. (D.I. 19) Jefferson, however, did not

3

amend his Petition. The Court ordered the State to file a supplemental brief addressing the change in the procedural status of Jefferson's state criminal proceeding and its effect on the instant habeas proceeding. (D.I. 20) The State filed an Amended Answer asking the Court to deny the Petition as procedurally barred. (D.I. 21)

Meanwhile, on August 16, 2010, Jefferson filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting three ineffective assistance of counsel claims. See State v. Jefferson, 2011 WL 381940 (Del. Super. Ct. Feb. 2, 2011). The Delaware Superior Court denied Jefferson's Rule 61 motion as meritless on February 2, 2010. Id. There is no indication that Jefferson has appealed that decision.

### III. Governing Legal Principles

#### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." Woodford v. Garceau, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see Woodford, 538 U.S. at 206.

#### B. Exhaustion and Procedural Default

4

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring the petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); Coverdale v. Snyder, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

If, however, state court remedies are no longer available for a prisoner's federal habeas

claims, the claims are "technically exhausted" but procedurally defaulted. See Woodford v. Ngo, 548 U.S. 81, 92 (2006). For example, if the petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 260-64 (1989). Additionally, if the petitioner presents unexhausted habeas claims to a federal court, but state procedural rules would bar further state court review of those claims, the federal court will treat the claims as technically exhausted but procedurally defaulted. Coleman, 501 U.S. at 749; Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 F.3d at 224. A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, Bousley v. United States, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Sweger v. Chesney, 294 F.3d 506, 522-24 (3d Cir. 2002).

Finally, although federal courts cannot grant habeas relief on unexhausted claims, federal courts may deny unexhausted claims as meritless. 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure to the applicant to exhaust the remedies available in the courts of the State.").

## IV. Discussion

Jefferson asserts the following four claims for relief in his Petition: (1) the trial court violated his First Amendment rights by not permitting him to address the court personally about a continuance request; (2) the officers of the Wilmington Police Department violated his Fourth Amendment rights by seizing and searching property that did not belong to him or the State of Delaware; (3) his Sixth Amendment rights were violated because he did not have a jury of his peers; and (4) his Fourteenth Amendment rights were violated because the State and the trial court did not give him his rights or let him exercise his rights. Jefferson did not raise these claims on direct appeal or in his Rule 61 motion.[1] See Jefferson, 2010 WL 2490934, at *3 (direct

---

[1] On direct appeal, Jefferson presented the following four "questions" as appellate arguments: why was he released on bail after being arrested on traffic charges and then later arrested on drug charges; why was an inventory checklist not completed at the time the police searched his car; why did he not see a chain of custody report or a toxicology report entered into evidence; and could the Delaware Supreme Court take a look at two Delaware statutes relating to

7

appeal); Jefferson, 2011 WL 381940, at *3 (Rule 61 proceeding). It also appears that Jefferson did not file a post-conviction appeal within the thirty (30) day period set forth in Delaware Supreme Court Rule 11. Consequently, any attempt to file a post-conviction appeal at this juncture would be time-barred. Moreover, as explained by the State, even if Jefferson timely presented these claims to the Delaware Supreme Court on appeal from the denial of his Rule 61 motion, the Claims would be barred as procedurally defaulted under Rule 61(i)(3) due to his failure to raise them on direct appeal.[2] See, e.g., Dixon v. Phelps, 607 F. Supp. 2d 683, 688 n. 2 (D. Del. 2009).

In these circumstances, the Claims are technically exhausted but procedurally defaulted. Therefore, the Court cannot review the merits of Claims One through Four absent a showing of cause and prejudice, or that a miscarriage of justice will occur if the Claims are not reviewed.

Jefferson does not allege any cause for his failure to present these Claims to the Delaware Supreme Court on direct or post-conviction appeal. In turn, Jefferson cannot demonstrate actual prejudice resulting from his default of the instant four Claims, because none of his Claims have merit. *See infra* at 9-10. And finally, the Court concludes that the miscarriage of justice

---

the registration of vehicles. Jefferson, 2010 WL 2490934, at *1. Jefferson's Rule 61 motion raised the following three ineffective assistance of counsel claims: (1) counsel did not diligently pursue certain matters on Jefferson's behalf; (2) counsel did not prep for trial and did not seek material of Rule 16 documents and tangible objects; and (3) counsel operated under a conflict of interest. Jefferson, 2011 WL 381940, at *2.

[2]Rule 61(i)(2) would also bar the Claims as repetitive due to Jefferson's failure to raise them in his Rule 61 motion. Although a Delaware state court may excuse the procedural bar of Rule 61(i)(2) in the interest of justice, and may also excuse the procedural bar of Rule 61(i)(3) by applying Rule 61(i)(5)'s "miscarriage of justice" provision, Jefferson has not presented, and the Court does not discern, any reason why the Delaware Supreme Court would apply these exceptions to the instant four Claims on post-conviction appeal.

exception to the procedural default doctrine cannot excuse Jefferson's default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, Three, and Four as procedurally barred from federal habeas review.

Nevertheless, given the record's silence as to whether Jefferson has appealed the Superior Court's denial of his Rule 61 motion and the fact that no Delaware State Court has expressly determined that the instant four Claims are procedurally barred from further state court review, the Court alternatively denies the Claims as meritless under § 2254(b)(2). See Granberry v. Greer, 481 U.S. 129 (1987); see, e.g., Gomez v. Taylor, 2010 WL 597949, at *2 (E.D.N.Y. Feb. 17, 2010)("Even where exhaustion is still possible, a federal habeas court may simply deny the claim on the merits."). For instance, in Claim One, Jefferson complains that the trial court violated his First Amendments rights by preventing him from "speaking freely" about his request for a continuance. Even if the Court liberally construes the Claim as alleging a due process violation, the Court finds that the trial transcript belies Jefferson's assertion. See, e.g., Morris v. Slappy, 461 U.S. 1, 11-12 (1983)("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel"). The trial judge in this case personally addressed Jefferson prior to the start of trial about Jefferson's desire to reschedule the proceeding while seeking new counsel, and explained that he was denying Jefferson's continuance request "because it was not brought to [the court's] attention until after the jury had been selected [and because n]o sufficient reason [was] set forth [] to continue the case to obtain another attorney." (Doc. No. 23, A-67, App. To Appellant's Op. Br. Jefferson v. State, No.674, 2009 ); see also Jefferson, 2011 WL 381940, at *3 (describing the trial judge's

9

colloquy with Jefferson on the continuance issue).

In turn, Claim Two does not warrant relief because the Fourth Amendment violation asserted therein is not cognizable on federal habeas review. See Stone v. Powell, 428 U.S. 465, 490 (1976). Claim Three lacks merit because Jefferson's cursory and unsubstantiated allegation that the jury did not reflect his "social ethnic group, nor [anyone] of [his] economical status" fails to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement. See Berghuis v. United States, 130 S.Ct. 1382, 1387 (2010)(a petitioner establishes a prima facie violation of the cross-section requirement by showing that the alleged under-representation of those "distinctive" groups on the jury was due to the systematic exclusion of those groups in the state court's jury selection process). More specifically, Jefferson has not explained how the groups he describes qualify as "distinctive groups in the community," and he has not provided basic facts concerning how many of the summoned jurors were from the "distinctive" groups and how that number compared to the population from which the jury pool was drawn. See, e.g., Albrecht v. Horn, 314 F. Supp. 2d 451 (E.D. Pa. 2004), vacated and remanded on other grounds, 485 F.3d 103 (3d Cir. 2007). And finally, Claim Four's allegation that the State and/or trial court did not let Jefferson exercise his rights is so vague and conclusory that it fails to allege a prima facie constitutional violation warranting federal habeas review.[3]

## V. Certificate of Appealability

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2008). A

---

[3]The Court notes that Jefferson failed to amend the Petition when given the opportunity to do so.

certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that Jefferson's Petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the Court declines to issue a certificate of appealability.

## VI. **Conclusion**

For the reasons stated above, the Court will deny Jefferson's Petition for Writ of Habeas Corpus without an evidentiary hearing. An appropriate Order follows.